IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SANDRA HERSHBERGER
and DAVID MITCHELL,
her husband,

       Plaintiffs,

v.                                          Case No. 2:10-cv-000837

ETHICON ENDO-SURGERY, INC.,
an Ohio corporation, a subsidiary of
JOHNSON & JOHNSON, a New Jersey
corporation,

       Defendants.

## MEMORANDUM OPINION, ORDER AND RECOMMENDATIONS

This products liability case presents the issue of whether, pursuant to Rule 26(g), Fed. R. Civ. P., sanctions should be imposed on defendants which failed, in a timely manner, to produce discovery material relating to other similar incidents involving its product.  The plaintiffs also raise other issues respecting the defendants' conduct.  The product in this case is a Proximate ILS Curved Intraluminal Stapler (model CDH29) ("the stapler"), used in a colosotomy reversal to fasten the descending colon to the rectum, a procedure called "anastomosis."  The plaintiffs' complaint alleges that the stapler "malfunctioned and failed to discharge any staples, resulting in perforation of the colon and necessitating further surgical and other medical treatment."  (Complaint, ECF No.

1-1, at 4.)   More specifically, the complaint asserts that the stapler was not loaded with staples prior to distribution.   Id.

Pending before the Court is the plaintiffs' Motion for Sanctions (ECF No. 131), supported by exhibits and a memorandum. The defendants responded in opposition (ECF No. 212), and the plaintiffs filed a reply (ECF No. 231).  An evidentiary hearing was conducted on July 28, 2011.  The Motion for Sanctions is granted.

### Pertinent Facts

The proposed pretrial order (ECF NO. 192, at 16-30), sets forth the parties' respective recitations of the evidence.   On February 6, 2009, Sandra Hershberger underwent surgery to reverse a colostomy.  The surgeons have testified that the stapler was used properly but that it did not deploy any staples when fired.  Id. at 18-20.  The stapler is a single-use device.  The defendants contend that the stapler was fired prematurely by the surgical resident and that unformed staples can be seen on a CT scan.  Id. at 26-30.  The stapler was given to the surgical charge nurse.

On February 19, 2009, a meeting was held at the hospital, attended by the lead surgeon, the surgical charge nurse, the defendants' division sales manager, Peter McNally, and the defendants' sales representative, Cynthia Hutchings.  The stapler was examined and the functioning of the stapler during Ms. Hershberger's surgery was discussed.

**Procedural History**

This action was filed in the Circuit Court of Kanawha County, West Virginia on April 16, 2010 (Notice of Removal, ECF No. 1, at 1). Process was served through the Secretary of State's Office on May 25, 2010. It was removed to this Court on June 17, 2010. Rule 26(a)(1) disclosures were due no later than September 10, 2010 (Order and Notice, ECF NO. 4). Discovery began in August, 2010 and continued very actively through early June, 2011.

**Discovery of Other Similar Incidents**

In virtually any products liability case, there are two significant questions: What happened to the plaintiff? Has this happened to anybody else? In pursuing the second question, the plaintiffs served their First Set of Requests for Production of Documents on August 24, 2010 (ECF No. 7), which included Request No. 16, and received a response on October 21, 2010 (ECF No. 15):

> **REQUEST NO. 16**: All lawsuits, warranty claims, field reports, or other claims or reports with respect to the Ethicon Stapler, or substantially similar products as identified in your response to Interrogatory No. 9 of Plaintiffs' First Interrogatories to All Defendants, whether generated by this Defendant's quality control personnel, the FDA, patients, physicians, salespersons, distributors, employees of this Defendant, or other persons, and which allege that the stapler had not been loaded with staples at the time it was manufactured and packaged.
>
> **RESPONSE**: Objection. Ethicon objects to the relevancy of other litigation. Additionally, this request as a whole is vague and overly broad. Additionally, the term "substantially similar" is vague, broad, and subject to different meanings. Notwithstanding said objections, and after a reasonable investigation, there are no documents

3

responsive to this request.

(ECF No. 131-1, at 2.)  The response was signed by Robert H. Akers.

On November 17, 2010, the plaintiffs tried again with more specific language, and served their Third Set of Requests for Production of Documents (ECF No. 22), which included Request No. 1(a), and received a response on December 20, 2010 (ECF No. 35):

> **REQUEST NO. 1**: To the extent not previously produced in response to Plaintiffs' First or Second Requests for Production, produce the following items:
>
> > (a) All Product Inquiry Verification Reports (PIVRs) which relate to an Ethicon Proximate ILS Intraluminal Circular Stapler, Product Number CDH29 which allege that a stapler failed to fire due to a lack of staples.
>
> > * * *
>
> **RESPONSE**: (a) Objection.  This request is overly broad and irrelevant as it is not limited in temporal or geographic scope and does not pertain to the subject stapler at issue in this case.  This request also seeks information beyond the scope of this litigation, information protected by the attorney-client and work product privilege, and is not reasonably calculated to lead to the discovery of admissible evidence. Additionally, there is no predicate that any such PIVR would be substantially similar or admissible in this (or any other case).  Notwithstanding these objections, Ethicon will agree to produce other PIVRs from 2002 to February 6, 2009, which emanate from the United States and in which it was alleged that an Ethicon Proximate ILS Intraluminal Circular Stapler, Product Number CDH29 "failed to fire" due to a lack of staples.  Please see the Product Inquiry Verification Report, attached as Exhibit A.  Please note that the PIVR Report produced in response to this Request has been redacted to protect the privacy interests of non-EES employers and information protected by the attorney-client and work product privilege has also been redacted.

(ECF No. 131-4, at 2-3.)  The defendants produced information

4

regarding one similar incident.  Again, the response was signed by Mr. Akers.

On January 9, 2011, the plaintiffs' attorney expressed his dissatisfaction with the response via e-mail, complaining that it was improper to limit the production to the years 2002-2009, and to the United States.  (ECF No. 131-5.)  The Court has not been provided with a response to this e-mail.

On January 29, 2011, the plaintiffs served their notice of deposition (ECF No. 57) of Carlos Gabaldon, a customer quality engineer for the defendants, located in the El Paso, TX/Juarez, Mexico area.  During his deposition on February 23, 2011, Mr. Gabaldon testified that, using a Siebel database, he had determined that there were seven incidents in which it was reported that a stapler was missing staples.  On February 28, 2011, the plaintiffs' attorney agreed not to file a motion to compel production of the seven incidents while defense counsel tried to "work something out."  (ECF No. 131-6.)  On March 6, 2011, the plaintiff's attorney inquired again about the documents, id., and on March 9, 2011, defense counsel produced them.  (ECF No. 131-7.)

On February 25, 2011, two days after Mr. Gabaldon's first deposition and before the defendants produced the records of the seven incidents, the plaintiffs served their Tenth Set of Requests for Production of Documents (ECF No. 67), which included Request No. 2:

> **REQUEST NO. 2**: To the extent not previously produced, produce all "Verification Report - Product Issue" documents and "Product Issue Analysis Reports" related to any incident alleging that a CDH stapler was not loaded with staples from January 6, 1999 to January 6, 2009.

(ECF No. 131-8, at 2.)  After some motion practice which is not pertinent here, on April 26, 2011, the defendants were directed to respond to the Tenth Set, and the plaintiffs were permitted to serve their Ninth Set (which had not been previously served due to a clerical error) (ECF Nos. 100, 101).  The Ninth Set included Request No. 5:

> **REQUEST NO. 5**: To the extent not previously produced, produce all MedWatch filings, Siebel database entries (including testing, correspondence, notes, memoranda, product analyses, etc.), and other documentation which contains an allegation that a CDH stapler was not loaded with staples.

On May 24, 2011, the plaintiffs again deposed Carlos Gabaldon about the other incidents disclosed on March 9, 2011 (ECF NO. 107).

On June 3, 2011, in response to the Ninth and Tenth Sets, the defendants produced records of an additional 125 other incidents dated between November 19, 2002 and January 26, 2009.  At the hearing, it was learned that 44 of these incidents are similar to the situation presented in this case, and 21 of the staplers were examined by Carlos Gabaldon after they were returned to the defendants.[1]

---

[1]  The plaintiffs' response in opposition to the defendants' Motion in Limine No. 10 to Preclude Reference to Other Events and Occurences Involving Ethicon Staplers (ECF No. 181), states that there are 45 similar incidents, summarized at ECF No. 206-13,

### Positions of the Parties

The plaintiffs contend that the defendants' improper responses and delayed disclosures, after dogged pursuit by the plaintiffs, is part of a pattern of improper conduct by the defendants. (Mem., ECF No. 132, at 7.) They base their Motion for Sanctions on Federal Rule of Civil Procedure 26(g), 28 U.S.C. § 1927, and the court's inherent authority to impose sanctions for conduct which abuses the judicial process. Id. at 10-13. They do not rely on Rule 37.

The defendants' Response argues that the plaintiffs' Motion should not be considered at all because the plaintiffs did not meet and confer in an attempt to resolve the dispute, pursuant to our Court's Local Rule 37.1 (Response, ECF No. 212, at 2). The defendants assert that § 1927 requires a showing of subjective bad faith, and that Ethicon and its attorneys acted in good faith and with substantial justification. Id. at 5-13. They chide the plaintiffs for not asking more questions concerning other incidents. Id. at 7. They dispute any suggestion of a pattern of improper conduct. Id. at 13-19. In support of their assertions, they provide an affidavit of Kristi Geier, the defendants' Risk Manager, who was responsible for gathering the information for the discovery responses (ECF No. 212-3).

In reply, the plaintiffs contend that the defendants were in

---

filed under seal at ECF No. 207-4.

the wrong from the start, when they responded to the First Set of
requests.  (Reply, ECF No. 231, at 1.)  They note that Federal Rule
of Civil Procedure 37 and Local Rule 37.1 are inapplicable to their
Motion.  Id. at 11-14.  The reply is a particularly compelling
document.

**Applicable Law - Rule 26(g)**

Federal Rule of Civil Procedure 26(g) provides, in pertinent
part, as follows:

> **(g)  Signing Disclosures and Discovery Requests, Responses, and Objections.**
> **(1) Signature Required; Effect of Signature.**
> Every disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record in the attorney's own name . . ..  By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry:
> > **(A)** with respect to a disclosure, it is complete and correct as of the time it is made; and
> > **(B)** with respect to a discovery request, response, or objection, it is:
> > (i) consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
> > (ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
> > (iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.
> * * *
> **(3)  Sanction for Improper Certification.**  If a

8

certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation.

The Advisory Committee Notes to Rule 26(g) provide amplification of parties' and attorneys' responsibilities while engaging in pretrial discovery:

Rule 26(g) imposes an affirmative duty to engage in pretrial discovery in a responsible manner that is consistent with the spirit and purposes of Rules 26 through 37.  In addition, Rule 26(g) is designed to curb discovery abuse by explicitly encouraging the imposition of sanctions.  The subdivision provides a deterrent to both excessive discovery and evasion by imposing a certification requirement that obliges each attorney to stop and think about the legitimacy of a discovery request, a response thereto, or an objection. * * *

Although the certification duty requires the lawyer to pause and consider the reasonableness of his request, response, or objection, it is not meant to discourage or restrict necessary and legitimate discovery.  The rule simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection.

The duty to make a "reasonable inquiry" is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances.  It is an objective standard similar to the one imposed by Rule 11.  See the Advisory Committee Note to Rule 11.  See also *Kinee v. Abraham Lincoln Fed. Sav. & Loan Ass'n,*, 365 F. Supp. 975 (E.D. Pa. 1973).  In making the inquiry, the attorney may rely on assertions by the client and on communications with other counsel as long as that reliance is appropriate under the circumstances.  Ultimately, what is reasonable is a matter for the court to decide on the totality of the circumstances.

Rule 26(g) does not require the signing attorney to

> certify the truthfulness of the client's factual
> responses to a discovery request. Rather, the signature
> certifies that the lawyer has made a reasonable effort to
> assure that the client has provided all the information
> and documents available to him that are responsive to the
> discovery demand. * * *

Notes of Advisory Committee on Rules: 1983 Amendment (West 2011).

Two decisions from the District of Maryland discuss Rule 26(g) extensively, <u>Poole v. Textron, Inc.</u>, 192 F.R.D. 494 (D. Md. 2000), and <u>Mancia v. Mayflower Textile Servs. Co.</u>, 253 F.R.D. 354 (D. Md. 2008), and their analyses have assisted the undersigned in this matter.

**Analysis**

<u>Response to Request No. 16, First Set</u>

The discussion of the defendants' response to Request No. 16 must begin with Kristi Geier, who has received paralegal training and is employed as the defendants' Risk Manager. (Affidavit, ECF No. 212-3, at 1.) She was responsible for assisting counsel "with the formulation of answers and responses to Plaintiffs' discovery." <u>Id.</u> In one of several self-serving statements, she claims, "Each answer and response provided to Plaintiffs was done after I conducted a reasonable investigation and inquiry." <u>Id.</u> In her affidavit, Ms. Geier stated under oath that, with respect to Request No. 16, she "interpreted this request to seek any litigation materials involving the claim that the stapler had not been loaded with staples at the time it was manufactured and packaged." <u>Id.</u> at 2. She further stated that she did not

10

interpret Request No. 16 "to include any reports to the FDA or MedWatch reports filed by Ethicon" . . . or "to apply to 'Product Inquiry Verification Reports.'" <u>Id.</u>  During her testimony at the evidentiary hearing on the Motion for Sanctions, Ms. Geier stated that she "thought this was asking for litigation or claims, potential litigation."  She claimed that during her search, she found no litigation in which it was claimed that a stapler did not have staples in it.

The Court finds Ms. Geier's interpretation of Request No. 16 to be unreasonable in the extreme and, frankly, nonsensical.  There was no justification to single out one word in the request, "lawsuits," and to limit her search accordingly, thereby ignoring "warranty claims, field reports, or other claims or reports." Moreover, her interpretation is not reasonable when considered in the context of the rest of the request, which listed many potential groups of persons who could generate claims or reports: "[Ethicon's] quality control personnel, the FDA, patients, physicians, salespersons, distributors, employees of this Defendant, or other persons."  Most of those persons would not be expected to file a lawsuit concerning injuries received as a result of a surgeon using a stapler which had not been loaded with staples.  Ms. Geier further stated that she "did not interpret Request No. 16 to include any reports to the FDA or MedWatch reports filed by Ethicon.  Further, I did not interpret this

11

request to apply to 'Product Inquiry Verification Reports' ('PIVR')."  Id.  No matter how Ethicon titles its reports of complaints about staplers, it was Ms. Geier's "affirmative duty" to respond in a manner which was both complete and correct.  This she did not do.  The defendants' response was inappropriately limited to litigation.  The Court finds that the response to Request No. 16 was not substantially justified.

Counsel for Ethicon also had an "affirmative duty" to make a "reasonable inquiry" to satisfy themselves that the response to Request No. 16 was not "unreasonable."  The Court concludes that counsel for Ethicon either failed to inquire of Ms. Geier as to the basis for the response or agreed with her unreasonable interpretation of Request No. 16.  The Court doubts that the latter is true.  Attorney Robert H. Akers signed the responses which included the response to Request No. 16, thereby certifying that to the best of his knowledge, information and belief formed after a reasonable inquiry, the response was consistent with the Federal Rules of Civil Procedure and not unreasonable.  (ECF No. 131-1, at 3.)  According to the Advisory Committee Notes, his signature was a certification that he had "made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand."  Clearly Mr. Akers did not do this.  The Court finds that Mr. Akers' certification was improper and not substantially justified.

Response to Request No. 1, Third Set

Some of the testimony at the evidentiary hearing concerned the so-called Siebel database, which is the electronic record of all complaints, claims, inquiries and reports concerning Ethicon's products.   The database is searchable by "Voice of Customer" ("VOC") Codes, which are set forth on a list.   Ms. Geier's affidavit states that she relied on the language in the plaintiffs' request that the "stapler failed to fire due to a lack of staples." (ECF No. 212-3, at 2.)   After consulting with Ethicon's Customer Quality Department, which usually conducts searches of the Siebel database, a search using the VOC Code "missing staples" produced seven results.   Id.   A subsequent search indicates that use of the VOC Code "would not staple," would have produced dozens more results.

Despite having seven results from the search, only one result was produced to the plaintiffs, with a notation that the result was limited to the United States, one size of stapler, and a specified time period.   At the evidentiary hearing, Ms. Geier testified that the other six results were withheld as a result of her conversations with Ethicon's attorneys.   Ultimately, the other six results were produced after the plaintiffs' attorney complained on January 9, 2011, and after he learned about the other six during Mr. Gabaldon's first deposition on February 23, 2011.   There is no dispute that Ethicon's staplers are distributed throughout the

13

world, and those sold in the United States are identical to those sold in other nations.  There is no dispute that different sizes of staplers function the same.

Putting aside the inadequate search for other incidents related to Request No. 16, the Court finds that Ethicon's initial response to the plaintiffs' Request No. 1, Third Set, was unreasonably restricted to only one VOC code, "missing staples." At the evidentiary hearing, Ms. Geier testified that she looked at other VOC codes, including "would not staple," and concluded that "missing staples," most closely matched the request.  It appears that, until late Spring, 2011, she did not run any search for incidents coded "would not staple," despite the language in the plaintiffs' Complaint that the stapler "malfunctioned and failed to discharge any staples."

The Court further finds that the withholding of six of the seven incidents revealed in the search was unreasonable, because there was no good reason for limiting the response to a particular size of stapler sold in the United States.  Ms. Geier testified at the evidentiary hearing that she and counsel for Ethicon simply agreed to withhold information as to the six incidents.  Mr. Akers signed the response; the Court has no information as to the identify of the attorneys who decided, with Ms. Geier, to withhold the six other incidents.  The Court finds that the certification by Mr. Akers violated Rule 26(g) without substantial justification.

14

Responses to Request No. 2, Tenth Set and Request No. 5, Ninth Set

On April 26, 2011, the defendants were directed to respond to the Tenth Set of Requests, and the plaintiffs were permitted to serve their Ninth Set.  (ECF Nos. 100, 101.)  The defendants agreed that Mr. Gabaldon could be deposed again to testify about the seven additional incidents; his deposition occurred on May 24, 2011.  Ten days later, the defendants disclosed an additional 125 other incidents, of which plaintiffs' counsel identifies 44 as being similar to this case.  These incidents were located using the VOC code "would not staple."[2]

Ms. Geier's affidavit is silent as to when the defendants conducted the search which resulted in the 125 additional incidents.  The search should have been completed prior to Mr. Gabaldon's deposition, if the defendants had any intention of timely responding to the requests.  The responses were served shortly after discovery closed.

The Importance of the Other Similar Incidents

During the evidentiary hearing, Carlos Gabaldon (the defendants' Rule 30(b)(6) witness) testified that "it's impossible for a stapler to leave the plant without staples."  He described

---

[2]  Ms. Geier further testified that the responses as to other similar incidents were limited to 2002 forward, because the Siebel database was begun in 2002.  Documents produced indicate that 106 staplers were returned for evaluation between November 2001 and March 2002, and are searchable in another database.  The plaintiffs have not made an issue as to these staplers.

"Vision," a machine that takes photographs of each stapler produced and analyzes the images to insure quality control.  He stated that the Vision system changed shortly before the stapler used on Ms. Hershberger was manufactured.  During the manufacturing process, the Vision system is challenged at the beginning, in the middle, and at the end of each batch, to determine if it is accurately spotting defective staplers.  If a problem is discerned, someone is called to fix the equipment.

Twenty-one of the 45 other incidents involved staplers which Mr. Gabaldon tested when they were returned to Ethicon after decontamination.  The reports on the 21 incidents (titled either "Complaint File" or "Verification Report - Product Issue"), found at Plaintiff's Exhibit No. 36 (under seal), contain an "Event Description."  The reports describe occurrences remarkably similar to Ms. Hershberger's: the stapler cut tissue but did not staple it, resulting in longer surgeries and additional surgeries.  If the defendants' witnesses were to testify that it is "impossible" for a stapler to leave its manufacturing facility without staples, a jury would be seriously misled.

The Defendants' Excuses and Arguments

The defendants oppose the plaintiffs' Motion for Sanctions. First they assert that the Court should not entertain the Motion at all, because the plaintiffs did not attempt to meet and confer prior to filing.  The defendants rely on Local Rule 37.1(b), which

16

states:

> Before filing any discovery motion, including any motion for sanctions or for a protective order, counsel for each party shall make a good faith effort to confer in person or by telephone to narrow the areas of disagreement to the greatest possible extent.   It shall be the responsibility of counsel for the moving party to arrange for the meeting.

Unlike other provisions of the same Local Rule, subsection (b) fails to set forth any consequence for a failure to comply.

In accordance with the policy of the Judicial Conference, our Local Rules are numbered to correspond to the Federal Rules of Civil Procedure; Local Rule 37.1 amplifies Federal Rule of Civil Procedure 37.   Federal Rule 37(a) requires that a party moving to compel discovery must confer or attempt to confer in good faith. The penalty for failing to do so is the inability to recover fees and costs, including attorney's fees.   Federal Rule 37(b) contains no such requirement to confer or attempt to confer for a party moving for sanctions for failure to comply with a court order.   Our Local Rule 37.1 therefore imposes an extra hurdle for a party who seeks sanctions for noncompliance with an order, but it contains no consequence for failing to confer.   The plaintiffs make clear that they are <u>not</u> proceeding under Rule 37.   Indeed, it would be inappropriate for them to do so, because it appears that the defendants have not violated a court order.

This District has promulgated four pages of Local Rules relating to Federal Rule of Civil Procedure 26, none of which

concerns Rule 26(g).  The only reference to Federal Rule 26(g) is found in Local Rule 37.1(a): "Objections shall comply with FR Civ P 26(g) . . .."

Of importance is Federal Rule 26(g)'s provision that a court, "on its own," must impose an appropriate sanction if a certification violates the rule without substantial justification. If a motion from a party is not required before a sanction is imposed, then surely a local rule should not restrict a judge's discretion to act, with or without a motion.  The Court concludes that Local Rule 37.1 does not apply to motions filed under Federal Rule 26(g).

Second, the defendants chide the plaintiffs for not asking certain questions at various depositions (ECF No. 212, at 6-7), as if the plaintiffs were at fault for believing the defendants' response to Request No. 16, First Set.  The defendants' position reverses the duties set forth in Rule 26(g).  It was the defendants' duty to make a "reasonable inquiry;" it was the defendants' duty to make a reasonable response; and, pursuant to Rule 26(e), it was the defendants' duty to supplement its discovery responses in a timely manner.  The defendants' breached their duties in all three respects.

Third, the defendants profess that in all respects, they acted in good faith.  Id., at 5-13.  The Court is not in a position to assess whether Ms. Geier purposefully and intentionally restricted

her search of other similar incidents, and whether the defendants'
counsel had a bad motive in their approach to the plaintiffs'
efforts to discover other similar incidents, and makes no finding
as to bad faith.  It is clear that the defendants, like other
product manufacturers, were not motivated to reveal other similar
incidents of injuries to consumers; their conduct furthered their
self-interest in limiting their exposure.

### Sanctions

Rule 26(g) requires imposition of "an appropriate sanction on
the signer, the party on whose behalf the signer was acting, or
both," if the Court concludes that a discovery certification
violates the Rule without substantial justification.  "The sanction
may include an order to pay the reasonable expenses, including
attorney's fees, caused by the violation."  There is no reference
to the menu of possible sanctions found in Rule 37; the Advisory
Committee Notes state that "[t]he nature of the sanction is a
matter of judicial discretion to be exercised in light of the
particular circumstances."  Based upon the Court's findings that
the defendants and their counsel violated Federal Rule 26(g), it is
hereby **ORDERED** that the plaintiffs' Motion for Sanctions (ECF No.
131) is granted.

The plaintiffs have requested a broad array of sanctions,
including attorney's fees and costs for a variety of activities,
evidentiary rulings, and default judgment as to liability.  (ECF

No. 132, at 15.)  Upon consideration of the disputed facts in this case, and mindful of the strong preference that litigation be resolved on the merits, the Court declines to recommend to the presiding District Judge that he enter default judgment as to Ethicon's liability.  However, it is respectfully **RECOMMENDED** that the presiding District Judge admit into evidence testimony and exhibits concerning other similar incidents in which users of the staplers complained that the staplers cut tissue but did not staple it, and deny the defendants' Motion in Limine No. 10, ECF No. 181.  At present, according to the plaintiffs, there are 45 such incidents.  It is further **RECOMMENDED** that the presiding District Judge admit into evidence testimony and exhibits concerning the defendants' conduct during discovery with respect to other similar incidents.

    Based on the particular circumstances in this case, the Court intends, at a minimum, to require payment by the defendants and their counsel of the plaintiffs' attorney's reasonable fees and costs associated with the Motion for Sanctions, the filing of discovery requests for other similar incidents after Request No. 16, and Mr. Gabaldon's two depositions.  In addition, if the plaintiffs choose to take any additional depositions, all such depositions shall take place in Charleston, West Virginia, and the defendants will be responsible for the travel expenses of the

witnesses.[3]

To undertake a thorough consideration of appropriate sanctions, the Court needs additional information. It is further **ORDERED** that, within one week of the entry of this Memorandum Opinion, Order and Recommendations, the defendants shall file an affidavit by a person with extensive knowledge of the Siebel database and its metadata (not Kristi Geier), setting forth the following information regarding searches of the Siebel database concerning staplers, using the VOC code "would not staple," between February 6, 2009 and June 3, 2011:

a.  The date of each search;

b.  The name and title of the person who performed each search; and

c.  The results of each search.

It is further **ORDERED** that within two weeks of entry of this Memorandum Opinion, Order and Recommendations, counsel for the plaintiffs will file an affidavit of his reasonable attorney's fees and costs associated with the Motion for Sanctions, the filing of discovery requests for other similar incidents after Request No. 16, and Mr. Gabaldon's two depositions, with sufficient detail that the Court will be able to assess whether the time spent and the expenses incurred were appropriate for the task specified.  The

---

[3]  The Court has learned that during a recent status conference, counsel for the plaintiffs indicated that he does not need additional discovery.

defendants shall file their response to the affidavit within two weeks after the affidavit is filed; the response must indicate whether the defense attorneys and the defendants agree on a division of responsibility for payment of the plaintiffs' attorney's fees and costs.  The plaintiffs' attorney may file a reply within one week after the response is filed.

### Identification of Peter McNally as Witness

After an incident occurs which results in litigation, investigators typically try to answer two major questions: What happened? Who are the witnesses?  With respect to Ms. Hershberger's surgery on February 6, 2009, a meeting was held at Charleston Area Medical Center on February 19, 2009, attended by the surgeon (Dr. Maxwell), the surgical charge nurse who had custody of the stapler (Ms. Campbell), the Ethicon sales representative (Cindy Hutchings), and the Ethicon District Sales Manager (Peter McNally).  The focus of the meeting was the allegation that the stapler had not been loaded with staples, so that it cut tissue but did not staple it. Dr. Maxwell has testified that on February 19, 2009, Peter McNally looked at the stapler used on Ms. Hershberger on February 6, 2009, and declared, in words to this effect: "This product is obviously defective, and I would testify in court to that fact." (Depo. of Dr. Maxwell, Dec. 21, 2010, ECF No. 131-16, at 92.[4])   At the

---

[4] Citations to deposition testimony are to the deposition transcript page.

evidentiary hearing, Mr. McNally denied making such a statement, but Ms. Campbell testified that he said, "If [I] had to testify in a court at that time [I] would have to say that the device was defective."   She wrote a memorandum that day and quoted Mr. McNally's statement.  (Mem. dated Feb. 19, 2009, ECF No. 131-27.)

The plaintiffs complain that the defendants' Rule 26(a)(1) disclosures, served on September 10, 2010, listed Cindy Hutchings, but not Peter McNally.  (ECF No. 131-23.)  On October 21, 2010, the defendants served their responses to the plaintiffs' Interrogatories 1 and 5, First Set.  When asked to identify persons with knowledge of facts, or persons who participated in any investigation of the incident at issue, the defendants listed only Cindy Hutchings, Marian Campbell and Dr. Maxwell, but not Peter McNally.  (ECF No. 131-2, at 3, 5-6.)  Kristi Geier verified the answers to the interrogatories.  Id. at 8.  On October 22, 2010, the defendants served their supplemental Rule 26(a)(1) disclosures and added Marian Campbell, but not Peter McNally.  (ECF No. 131-24, at 2.)  On November 18, 2010, counsel for the plaintiffs sent an email to defense counsel, asking about "Pete McNally."  On December 7, 2010, the defendants served supplemental answers to interrogatories and, for the first time, added Peter McNally as a person with knowledge, and summarized their version of the February 19, 2009 meeting.  (ECF No. 131-25, at 4-5.)

The plaintiffs contend that the defendants' failure to

disclose Peter McNally as a participant in the February 19, 2009 meeting is part of a pattern of improper conduct.  (ECF No. 132, at 8-9.)

The defendants respond that they did not purposefully or in bad faith withhold disclosure of his identify.  (ECF No. 212, at 17.)  They recite that Kristi Geier first spoke with Peter McNally in October, 2010, but they did not discuss the February 19, 2009 meeting.  Id.  The defendants further relate that Peter McNally was away from work for six weeks due to his wife's illness, and that "it was not until mid-December [2010] that Ms. Geier gained additional substantial information regarding Mr. McNally's knowledge surrounding the facts related to this case."  Id.  They point out that the plaintiffs have suffered no prejudice, in that he was revealed prior to any depositions.  Id. at 18.

In reply, the plaintiffs argue that "Ethicon has yet to offer a reasonable explanation for how it could know about the involvement of Cindy Hutchings in the above meeting and not know about the involvement of Peter McNally in the exact same meeting . . .."  (ECF No. 231, at 16.)

The Court does not fault the defendants for not including Peter McNally in its Rule 26(a)(1) disclosures.  He is probably not a person that the defendants "may use to support [their] . . . defenses."

Omitting Peter McNally from the answers to Interrogatories 1

24

and 5 is more problematic.  Rule 26(g) requires a responding attorney or party to certify that "to the best of the person's knowledge, information, and belief formed after a reasonable inquiry: with respect to a discovery . . . response . . ., it is: consistent with these rules . . .; not interposed for any improper purpose . . .; and neither unreasonable nor unduly burdensome . . .." The Advisory Committee Notes specify that

> Rule 26(g) does not require the signing attorney to certify the truthfulness of the client's factual responses to a discovery request.  Rather, the signature certifies that the lawyer has made a reasonable effort to assure that the client has provided all the information and documents available to him that are responsive to the discovery demand.  Thus, the lawyer's certification under Rule 26(g) should be distinguished from other signature requirements in the rules, such as those in Rules 30(e) and 33.

Rule 33(b)(3) requires that answers be made "under oath."

Kristi Geier testified at the evidentiary hearing that, as a matter of course, she contacted the appropriate sales representative shortly after she received a letter from the plaintiffs' attorney, in November, 2009, placing Ethicon on notice to preserve the subject stapler in anticipation of litigation.  She stated that she is concerned with the answers to three primary questions: Did the surgeon say what happened?  What is going on with the patient?  Where is the device?  She stated that she did not ask Ms. Hutchings whether anyone else employed by Ethicon had knowledge of the incident, and she made no effort to determine whether other employees had such knowledge.

25

The Court cannot determine whether the concealment of Peter McNally as a participant in the February 19, 2009 meeting, from October 21, 2010 (service of answers to interrogatories) to December 7, 2010 (service of supplemental answers), was a willful omission or not.  It appears that the plaintiffs suffered no prejudice; the disclosure of Marian Campbell as a witness would, more than likely, lead the plaintiffs to Peter McNally.  The Court finds that there is insufficient evidence that Ms. Geier violated Rule 33 or that defense counsel violated Rule 26(g) or Rule 33 with respect to Peter McNally.

### The Plaintiffs' Other Claims

The Court has carefully considered the plaintiffs' complaints about other conduct by the defendants relating to (1) the failure to document a statement attributed to Dr. Maxwell, (2) the filing of MedWatch reports concerning the incident, (3) a statement by Karen Kulinski-Hoffman to the hospital, and (4) disclosure of expert witnesses, and the defendants' response.  This judicial officer is referred discovery disputes only and declines to address these other claims.

### 28 U.S.C. § 1927 and Inherent Authority

The undersigned declines to proceed under either § 1927 or the inherent authority of the court, having determined that Rule 26(g) adequately addresses these matters.

26

The Clerk is directed to transmit this Memorandum Opinion, Order and Recommendations to counsel of record.

ENTER:  August 12, 2011

Mary E. Stanley
United States Magistrate Judge