IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

SANDRA HERSHBERGER, et al.

            Plaintiffs,

v.                                        CIVIL ACTION NO.  2:10-cv-00837

ETHICON ENDO-SURGERY, INC., et al.

            Defendants.

**MEMORANDUM OPINION AND SUMMARY JUDGMENT ORDER**

Pending before the Court is Defendant Ethicon Endo-Surgery's[1] Motion for Summary Judgment [Docket 123].  For the reasons that follow, the motion is **DENIED**.

I.  *FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Plaintiffs Sandra Hershberger and David Mitchell filed the instant action in the Circuit Court of Kanawha County, West Virginia, on April 16, 2010.  (Docket 1 at 1.)  Plaintiffs seek compensatory and punitive damages from Defendant for negligence, strict liability, and breach of warranty related to an allegedly defective stapler used on Plaintiff during surgery.  (Docket 1-1 at 8-12.)  Defendant removed the action to federal court on June 17, 2010, on the basis of diversity of citizenship.  (*Id.*)  The facts underlying the case are as follows.

---

[1] Johnson & Johnson, Ethicon's parent company, is also a named party.  For simplicity's sake, however, the Court refers to Defendants in the singular.

Plaintiff Sandra Hershberger[2] underwent a colostomy surgery in September 2008. A colostomy, or Hartmann's procedure, severs the patient's colon and reroutes the proximal, or upper, portion outside of the patient's body. On February 6, 2009, Plaintiff had surgery to reverse the colostomy. The first surgery in February 2009 was unsuccessful and is the subject of this litigation. Due to the failure of the first surgery, Plaintiff's surgeons attempted to reverse the Hartmann's procedure a second time on February 6, 2009.[3]

According to Plaintiff's surgeons, the stapler manufactured by Defendant and used during the first surgery was defective in that it was not loaded with staples. As such, they contend, the surgery was a failure despite their proper execution of the colostomy reversal procedure. In contrast, Defendant maintains that the stapler was loaded with staples and functioned properly during the surgery. Defendant believes that the stapler safety was removed prior to its use and one of the surgeons, Dr. Jain, prematurely and negligently fired the stapler. In its motion, Defendant asserts that radiology films of Plaintiff's bowels clearly and irrefutably demonstrate surgeon negligence was the cause of the surgery's failure. Defendant has produced expert testimony of this nature. However, Plaintiff also has expert witness interpretations of her radiology films, which dispute Defendant's theory of the case. Plaintiff has also produced the testimony of her surgeons, both of whom insist that the stapler was properly utilized but failed. Nonetheless, Defendant contends that there exist no issues of material fact requiring a jury, and Defendant accordingly moves for summary judgment.

---

[2] All references to "Plaintiff" are to Ms. Hershberger, not Mr. Mitchell.

[3] The second surgery failed as well, although the surgeons admit that the failure was due solely to their stapling part of Plaintiff's bladder to her rectum.

## II. APPLICABLE LAW

A federal court sitting in diversity must apply federal procedural law and state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Accordingly, the Court will utilize the summary judgment standard found in Fed. R. Civ. P. 56 and West Virginia's products liability law.

### A. *Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

### B. *Strict Liability for Product Defects*

West Virginia adopted a cause of action for strict products liability in *Morningstar v. Black & Decker Mfg. Co.*, 253 S.E.2d 666 (W. Va. 1979). The elements of a strict products liability cause of action as they relate to this case are: (1) the product was defective; (2) due to a defect in manufacturing; (3) which was present at the time the product left the manufacturer's control; and (4) which proximately cased the plaintiff's injury. *See Morningstar*, 253 S.E.2d at 680. In Syllabus

Point 3 of *Morningstar*, the West Virginia Supreme Court held that the cause of action for strict products liability is "designed to relieve the plaintiff from proving that a manufacturer was negligent in some particular fashion during the manufacturing process and permit proof of the defective condition of the product as the principal basis of liability." *Id.*, Syl. Pt. 3. The general test of whether a product is defective is "whether the product . . . is not reasonably safe for its intended use." *Id.*, Syl. Pt. 4. Reasonable safeness "is determined . . . by what a reasonably prudent manufacturer's standards should have been at the time the product was made." *Id.* In *Anderson v. Chrysler Corp.*, 403 S.E.2d 189 (W. Va. 1991), the West Virginia Supreme Court held that "[a] plaintiff is not required to establish a strict products liability cause of action by identifying the specific defect that caused the loss, but instead may permit a jury to infer the existence of a defect by circumstantial evidence." *Bennett v. Asco Servs., Inc.*, 621 S.E.2d 710, 717 (W. Va. 2005) (citing Syl. Pt. 3, *Anderson*, 403 S.E.2d 189). In order to proceed upon circumstantial evidence, however, "the plaintiff must show that there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction." Syl. Pt. 3, *Anderson*, 403 S.E.2d 189.

Defendant places great weight on the requirement from *Anderson* that, if a plaintiff relies on circumstantial evidence alone, she must "show that there was neither abnormal use of the product nor a reasonable secondary cause for the malfunction." *Id.* Defendant appears to argue that summary judgment must be granted in its favor unless Plaintiff can *conclusively establish* that no abnormal use or secondary cause existed. However, the Supreme Court of West Virginia addressed precisely this issue in *Bennett v. Asco Servs., Inc.*, 621 S.E.2d 710 (W. Va. 2005), where it held:

> Under *Anderson*, while a defect in a product cannot be presumed solely from the fact that an accident occurred, proof that a product malfunctioned—that is, failed to function as it was intended and typically would in normal usage—is circumstantial proof of its defective condition. *Anderson* does not require a plaintiff, to succeed at

4

> the summary judgment stage, to conclusively eliminate all possible contributing causes other than a defect for an accident. Instead, a plaintiff is only required to submit evidence that has the capacity to sway the outcome of the litigation, and from which a jury could fairly conclude that the most likely explanation of the accident involves the causal contribution of a product defect.

*Id.* at 717-18. Therefore, in order to make out her prima facie case of product defect under the circumstantial evidence rule set forth in *Anderson*, Plaintiff need only satisfy the standard set forth in *Bennett*.

### III. DISCUSSION

Defendant contends that there exist no genuine issues of material fact and that it is therefore entitled to summary judgment as a matter of law. According to Defendant, the facts and evidence conclusively and undisputedly prove that Plaintiff's injuries are due to the error of her surgeons and not a defect in its product. Defendant argues that Plaintiff cannot make out a prima facie case of product defect because radiology imaging and testimony firmly establish that the stapler was prematurely (but successfully) fired by Dr. Jain prior to entering the "green zone," or proper firing location. Even assuming the stapler was defective, Defendant insists that the Court must enter summary judgment because Plaintiff suffered no injury from firing the allegedly defective stapler and the defective stapler was not the proximate cause of Plaintiff's eventual injuries.

*A.    Plaintiff's Prima Facie Case*

Defendant acknowledges that Plaintiff's surgeons, Dr. Maxwell and Dr. Jain, have testified that immediately after firing the stapler, they were unable to locate staples in Plaintiff's body, in the stapler, or anywhere in the surgery area. (Docket 127-3 at 28-23, 66-67; Docket 127-5 at 19-26; Docket 127-6 at 4-8; 12-15.) The surgeons visually inspected the device and the surgical field, and they both were unable to confirm the existence of staples. (*Id.*) In response to the surgeons'

5

testimony, Defendant puts forth the opinion of an expert, Dr. Ellis, who claims the surgeons would be unlikely to see the staples because (1) they are small and thin, (2) tissue would immediately cover the staples, and (3) blood would obscure the area if the staples did not properly form due to premature firing.[4] (Docket 124 at 7 (referencing Dr. Ellis's report).) Defendant further argues that the mere existence of staples at 6-7 centimeters above Plaintiff's anal verge conclusively establishes surgeon error as the sole cause of Plaintiff's injuries. (Docket 140 at 5-7.)

Although the opinion of Dr. Ellis is relevant evidence, it does not conclusively establish that the surgeons' observations are unbelievable or due no weight by the trier of fact. Any interpretation of the radiology films and the presence of unformed staples is subject to Dr. Maxwell's testimony that after the second attempted surgery on February 6, 2009, "he removed some, but not all, of the staples from the bladder and the rectum." (Docket 127-3 at 73-74.) Defendant also overlooks the further testimony of Dr. Maxwell that both he and Dr. Jain confirmed that the stapler was properly positioned and in the green zone prior to removing the safety from the stapler and firing the device. (Docket 127-3 at 25, 63-64; Docket 127-5 at 6-11, 16.) This testimony is directly at odds with Dr. Ellis's theory that Dr. Jain prematurely deployed the stapler while inserting it, and further, that a nurse had removed the safety prior to insertion. (*See* Docket 124 at 7.) Further, Defendant overlooks Dr. Maxwell's testimony that he never heard the characteristic "crunch" that the stapler usually makes when the trigger is compressed, although the stapler trigger appeared to be fully compressed. (Docket 127-3 at 26-27, 65.) Finally, Defendant fails to acknowledge Dr. Maxwell's

---

[4] Notably, Plaintiff's expert, Dr. Sullivan, at least partly disagrees with Dr. Ellis's opinion regarding the visibility of the staples. Dr. Sullivan believes the staples should have been visible to Dr. Maxwell and Dr. Jain had the stapler deployed improperly formed staples due to premature firing. (Docket 127-9 at 16-17.)

clear and undisputed testimony that the stapler featured another defect—the breakaway washer was also missing from the device—a fact he noticed upon extracting the stapler. (*Id.* at 26, 32, 66-69.)

Nearly all of Plaintiff's evidence—including expert opinions interpreting the radiology films—is at odds with Defendant's theory of the case, yet Defendant claims that the radiology films themselves compel summary judgment in its favor. Under such circumstances, where Plaintiff has presented some "evidence that has the capacity to sway the outcome of the litigation, and from which a jury could fairly conclude that the most likely explanation of the accident involves . . . a product defect," the West Virginia Supreme Court has instructed that summary judgment is improper. The Court concludes that a reasonable jury could credit the testimony of Plaintiff's surgeons and the interpretations of the radiology films offered by Plaintiff's experts over those offered by Defendant's experts. Plaintiff has therefore come forward with enough evidence to overcome summary judgment on this point.[5]

### B. Proximate Causation

Even assuming Plaintiff can meet her burden of establishing a prima facie case of product defect, Defendant argues that the defect was not the proximate cause of Plaintiff's injuries because Dr. Jain and Dr. Maxwell were admittedly negligent in their second attempt at reversing Plaintiff's colostomy. In other words, Defendant contends that the surgeon negligence in the second surgery was a superseding cause of Plaintiff's injuries, such that regardless of any product defect, Defendant

---

[5] The Court's discussion on this point assumes that the *Anderson* rule applies, which Plaintiff vigorously disputes. In particular, Plaintiff argues that she has put forward direct evidence, as opposed to circumstantial evidence, and identified a specific defect in the stapler, both of which remove this case from the additional requirements imposed by *Anderson*. (Docket 127 at 14-15.) However, as the Court's discussion sets forth, even assuming the *Anderson* rule does apply to this case, Plaintiff survives summary judgment.

is relieved of liability. In West Virginia, the question of proximate cause is a "question[ ] of fact for the jury where the evidence is . . . such that reasonable men draw different conclusions from [the evidence]." Syl. Pt. 2, *Evans v. Farmer*, 133 S.E.2d 710 (W. Va. 1963). In order for an intervening cause to relieve a party of liability, it must "constitute a new effective cause and operate[ ] independently of any other act, making it and it only, the proximate cause of the injury." *Sheetz, Inc. v. Bowles Rice McDavid Graff & Love, PLLC*, 547 S.E.2d 256, 270 (W. Va. 2001) (citing Syl. Pt. 3, *Wehner v. Weinstein*, 444 S.E.2d 27, 29 (W. Va. 1994)). Under the circumstances of this case, the Court cannot conclude that the second surgery is a cause of Plaintiff's injuries that "operates independently" of the product defect, assuming one existed and caused Plaintiff's initial injuries. Simply put, the second surgery was put into motion by the failure of the first surgery, which is arguably attributable to Defendant's product.[6]

---

[6] The Court also notes and dismisses Defendant's argument that no injury resulted from the unsuccessful first surgery because the surgeons could have successfully completed the second surgery without any long term harmful consequences to Plaintiff. This argument is akin to a parachute manufacturer arguing that no injury resulted from its product failing to deploy mid-air because the parachutist had a back-up parachute (that also failed due to, say, an instructor negligently packing it).

8

*IV. CONCLUSION*

For the forgoing reasons, Defendant's Motion for Summary Judgment [Docket 123] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: August 24, 2011

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE