**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

SANDRA HERSHBERGER, et al.

Plaintiffs,

v. CIVIL ACTION NO. 2:10-cv-00837

ETHICON ENDO-SURGERY, INC., et al.

Defendants.

**MEMORANDUM OPINION AND ORDER**

This civil action, alleging products liability, was removed to this Court from Kanawha Circuit Court on June 17, 2010. By order entered May 31, 2011, motions in limine were due on or before July 13, 2011. The following pretrial motions are resolved by this opinion and order in the manner indicated below.

*I. SUMMARY OF DECISION*

(1) Non-party Motion to Quash Trial Subpoena [Docket 125] — **GRANTED**;
(2) Non-party Motion for Entry of Order Quashing Subpoena [Docket 248] — **GRANTED**;
(3) Plaintiff's Motion to Take Judicial Notice of Exchange Rate [Docket 129] — **GRANTED** as unopposed;
(4) Defendants' Motion to Strike Errata Sheet [Docket 135] — **GRANTED**, except as to fees and costs;
(5) Plaintiff's Motion in Limine re: General Motions [Docket 143] — **DENIED**;
(6) Plaintiff's Motion in Limine re: Stapler Safety Information [Docket 145] — **GRANTED IN PART** and **DENIED IN PART**;
(7) Plaintiff's Motion in Limine re: Cindy Hutchings' Statements [Docket 147] — **GRANTED IN PART** and **DENIED IN PART**;
(8) Plaintiff's Motion in Limine re: Second Stapler Firing [Docket 151] — **DENIED**;
(9) Plaintiff's Motion in Limine re: Allegations of Fault [Docket 153] — **DENIED**;
(10) Defendants' Motion in Limine re: Error on Production Line Evidence [Docket 155] — **DENIED**;

(11) Defendants' Motion in Limine re: Xenophobic Statements [Docket 157] — **GRANTED**;
(12) Defendants' Motion in Limine re: Punitive Damages [Docket 159] — **GRANTED IN PART** and **DENIED IN PART**;
(13) Defendants' Motion in Limine re: Lost Wages and Earning Capacity [Docket 162] — **GRANTED**;
(14) Defendants' Motion in Limine re: Medical Expenses [Docket 164] — **DENIED**;
(15) Defendants Motion in Limine re: Infection Causation [Docket 167] — **DENIED**; and
(16) Defendants' Motion in Limine re: Peter McNally Statements [Docket 177] — **DENIED**.

## *II. FACTUAL BACKGROUND & PROCEDURAL HISTORY*

Plaintiffs Sandra Hershberger and David Mitchell filed the instant action in the Circuit Court of Kanawha County, West Virginia, on April 16, 2010. (Docket 1 at 1.) Plaintiffs seek compensatory and punitive damages from Ethicon Endo-Surgery, Inc., and Johnson & Johnson ("Defendants") for negligence, strict liability, and breach of warranty related to an allegedly defective stapler used on Plaintiff Hershberger during surgery. (Docket 1-1 at 8-12.) Defendants removed the action to federal court on June 17, 2010, on the basis of diversity of citizenship. (*Id.*) The facts underlying the case are as follows.

Plaintiff Sandra Hershberger[1] underwent a colostomy surgery in September 2008. A colostomy, or Hartmann's procedure, severs the patient's colon and reroutes the proximal, or upper, portion outside of the patient's body. On February 6, 2009, Plaintiff had surgery to reverse the colostomy. A colostomy reversal involves re-connecting the patient's colon to the rectum, which is achieved by forming an "anastomosis," or continuous connection, between the two structures. The first surgery in February 2009 was unsuccessful and is the subject of this litigation. Due to the

---

[1] Hereinafter, all references to "Plaintiff" are to Ms. Hershberger, not Mr. Mitchell.

failure of the first surgery, Plaintiff's surgeons attempted to reverse the Hartmann's procedure a second time on February 6, 2009.[2]

According to Plaintiff's surgeons, the stapler manufactured by Defendants and used during the first surgery was defective in that it was not loaded with staples. As such, they contend, the surgery was a failure despite their proper execution of the colostomy reversal procedure. In contrast, Defendants maintain that the stapler was loaded with staples and functioned properly during the surgery. Defendants believe that the stapler safety was removed prior to or during its use and one of the surgeons, Dr. Jain, prematurely and negligently fired the stapler. Throughout the course of this litigation, Defendants have argued that radiology films of Plaintiff's bowels clearly and irrefutably demonstrate that surgeon negligence was the cause of the surgery's failure. Defendants have come forward with expert testimony of this nature. However, Plaintiff also has expert witness interpretations of her radiology films, which dispute Defendants' theory of the case. Plaintiff has additionally produced the testimony of her surgeons, both of whom insist that the stapler was properly utilized but failed.

On August 24, 2011, the Court denied Defendants' motion for summary judgment based on the existence of material factual disputes. (Docket 271.) On January 19, 2012, at the request of the parties, the Court held a hearing to vet the relevance and reliability of the experts' opinions pursuant to *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592 (1993). An order regarding the expert opinions was issued on February 15, 2012; it resolved five of the then-pending motions in limine. This order resolves the bulk of the remaining pretrial motions.

---

[2] The second surgery failed as well, although the surgeons admit that the failure was due solely to their incorporating part of Ms. Hershberger's bladder in the attempted anastomosis.

## *III. DISCUSSION*

### *A. Trial Subpoena for Dr. Akhilesh Jain [Dockets 125, 248]*

The Court must quash a trial subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person," unless certain circumstances are present. Fed. R. Civ. P. 45(c)(3)(A)(ii), (B)(iii). The proponent of these motions, Dr. Akhilesh Jain, currently lives and works in Connecticut. Neither party responded to either motion. Accordingly, the Motion to Quash Trial Subpoena [Docket 125] and Motion for Entry of Order Quashing Subpoena [Docket 248] are **GRANTED**. The subpoena issued by Defendants commanding the appearance of Dr. Jain at the trial of this matter is hereby **QUASHED**.

### *B. Plaintiff's Motion to Take Judicial Notice of Exchange Rate [Docket 129]*

Plaintiff asks the Court to take judicial notice that the exchange rate for Mexican Pesos to U.S. Dollars was 13.33 Pesos per Dollar on January 6, 2009. (Docket 129 at 1.) Defendants do not object. (Docket 186 at 1.) Federal Rule of Evidence 201(b)(2) permits judicial notice of "ascertainable facts"; that is, those "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." The exchange rate adopted by the United States government for Mexican Pesos to United States Dollars on January 6, 2009, was 13.33 Pesos per U.S. Dollar. (*See* Docket 129 at 2-3.) This fact is capable of ready determination by resort to the Federal Reserve System Board of Governors website, as well as other materials published by the U.S. government. As such, the motion [Docket 129] is **GRANTED**. Upon inclusion in the Plaintiff's proposed jury instructions, the Court will instruct the jury to accept this fact as true.

*C. Defendants' Motion to Strike Errata Sheet [Docket 135]*

On May 4, 2011, Plaintiff's rebuttal expert in radiology, Dr. Mark Younis, was deposed. On June 14, 2011, Dr. Younis filed an errata sheet to his deposition, which by all accounts makes substantive changes to the deposition testimony. (Docket 136 at 4-5; Docket 225 at 2.) Defendants filed a motion to strike the errata sheet, arguing that it is an impermissible use of Rule 30(e) and fails to comply with the procedural limitations set forth in the rule. *See* Fed. R. Civ. P. 30(e). Federal Rule of Civil Procedure 30(e) permits a deponent "30 days after being notified . . . that the transcript or recording is available in which: (A) to review the transcript or recording; and (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them." *Id.* Neither party has so much as mentioned the date on which Dr. Younis was notified that the transcript of his deposition was available for review. However, the record reveals that Dr. Younis signed his errata sheet on June 2, 2011, which was necessarily within 30 days of the transcript's availability. (Docket 135-2 at 1.) Accordingly, the errata sheet itself was timely, and the only inquiry relates to the adequacy of its contents.

Turning to that question, the Court notes first that the overwhelming majority of case law regarding Rule 30(e) instructs that it is to be applied strictly. *See, e.g., E.I. du Pont de Nemours & Co. v. Kolon Indus.*, 277 F.R.D. 286, 295 (E.D. Va. 2011); *Holland v. Cedar Creek Mining, Inc.*, 198 F.R.D. 651, 652-53 (S.D. W. Va. 2001) ("[T]his court, like most courts, will insist on strict adherence to the technical requirements of Rule 30(e)."). The errata sheet Dr. Younis submitted on June 2, 2011, does not contain "reasons for making [his changes]," as required by Rule 30(e). Indeed, such reasons were not supplied until Plaintiff responded to the motion to strike, on July 22, 2011. Plaintiff argues that Defendants were on notice that Dr. Younis would be making substantive

changes to his deposition testimony, and the requirements of Rule 30(e) are therefore met. The basis for this argument is Dr. James Sullivan, who during his May 5, 2011, deposition testimony alluded to a telephone conversation with Dr. Younis in which Younis reportedly revised his radiographic findings. (Docket 225 at 2.) Such a showing is inadequate under the Federal Rules of Civil Procedure. Dr. Sullivan's deposition testimony is no substitute for a signed statement of reasons, which was to accompany the errata sheet in a timely manner. As such, the motion [Docket 135] is **GRANTED**, and Dr. Younis's errata sheet is stricken from the record in this case. However, Defendants' motion for fees and costs associated with the Motion to Strike is **DENIED**.

*D. Plaintiff's General Motions in Limine [Docket 143]*

On July 13, 2011, Plaintiff filed General Motions in Limine seeking, *inter alia*, exclusion of non-existent evidence and faithful application of the Federal Rules of Evidence and Civil Procedure. Plaintiff's motion is yet another example of the gross over-litigation of this case. The motion addresses either evidence that does not exist (and therefore requires no limiting motion), fundamental evidentiary principles about which there is and could be little dispute, or expressly undisputed matters. Accordingly, the General Motions in Limine are **DENIED**. Specifically, (1) Defendants may express, within reason, their sympathy for Plaintiff's plight at trial; (2) Dr. Sullivan may be cross-examined regarding the delay in his deposition answer; and (3) the parties may explain to the jury the late production of Plaintiff's CT films from third parties.

*E. Plaintiff's Motion in Limine re: Stapler Safety Information [Docket 145]*

Plaintiff filed her Motion in Limine regarding stapler safety information on July 13, 2011. In the motion, Plaintiff argues for the exclusion from evidence at trial of: (1) any information regarding the number of Ethicon staplers produced within certain time frames; (2) any comparison

of Ethicon staplers to those of Ethicon's competitors and any information relating to such comparison; and (3) any information regarding the "great safety record" of Ethicon staplers. (Docket 145 at 1.) Defendants respond that they do not intend to introduce evidence related to either point (2) or (3). Accordingly, the motion [Docket 145] is **GRANTED IN PART** as to those points. The motion is **DENIED** as to point (1), however; Defendants may offer evidence of stapler production numbers as otherwise relevant to the case (*e.g.*, in response to evidence of other similar incidents).

*F. Plaintiff's Motion in Limine re: Cindy Hutchings' Statements [Docket 147]*

Plaintiff seeks to exclude a statement made by Cindy Hutchings as inadmissible hearsay without an applicable exception under the Federal Rules of Evidence [Docket 147]. The motion concerns Ms. Hutchings's assertion that shortly after the relevant surgeries, Dr. Maxwell informed her that the stapler was fired outside the "green zone." (Docket 148 at 1.) Plaintiff's motion speculates that Defendants will call Ms. Hutchings to recount Dr. Maxwell's alleged statement for the truth of its contents. Defendants correctly respond that Ms. Hutchings' statement may be admitted at trial for reasons that do not violate the rule against hearsay, such as impeachment evidence or for reasons other than to demonstrate the truth of the matter asserted. (Docket 217 at 2.) However, to the extent Defendants argue that Federal Rule of Evidence 804(b)(3), pertaining to statements against interest by an unavailable witness, is applicable to Dr. Maxwell, they are incorrect, since Dr. Maxwell is available as far as the Court knows. The motion [Docket 147] is **GRANTED** to the extent Ms. Hutchings' statement is offered as hearsay without an applicable exception or exclusion and **DENIED** without prejudice for all other purposes.

*G. Plaintiff's Motion in Limine re: Second Stapler Firing [Docket 151]*

By this motion, Plaintiff seeks an order precluding Defendants from introducing evidence of the second stapler firing on February 6, 2009, for the purpose of arguing superseding or intervening cause. In the Memorandum Opinion and Order denying summary judgment, the Court stated it could not conclude, as a matter of law, that the second surgery operated as a superseding or intervening cause such that Defendants are relieved of liability. (Docket 271 at 7-8.) The Court also noted, however, that in West Virginia, questions of proximate causation such as this one are "questions of fact for the jury where the evidence is . . . such that reasonable men draw different conclusions." Syl. Pt. 2, *Evans v. Farmer*, 133 S.E.2d 710 (W. Va. 1963). It is the opinion of the Court that reasonable minds could differ on the question of whether the second surgery constitutes a "new effective cause" or whether it is a continuation of any injury or risk caused by the first surgery. Proximate cause is a question for the jury, and Defendants will be permitted to introduce evidence of the second surgery to argue causation. The motion [Docket 151] is **DENIED**.

*H. Plaintiff's Motion in Limine re: Allegations of Fault [Docket 153]*

Plaintiff also filed a motion in limine to preclude Defendants from arguing or introducing evidence that tends to show negligence by Drs. Jain and Maxwell in performing Plaintiff's surgeries on February 6, 2009 [Docket 153]. According to Plaintiff, such evidence is inadmissible because: (1) Defendants failed to join the doctors to this action; (2) Defendants failed to comply with certain requirements of the West Virginia Medical Professional Liability Act ("MPLA"); and (3) Defendants may not "proceed against the empty chair" (meaning Drs. Jain and Maxwell) without establishing that Plaintiff was comparatively negligent. (Docket 153 at 1-2.) In this case, Defendants assert that physician negligence is an intervening or superseding cause of Plaintiff's

damages. "[West Virginia] law recognizes that '[a]n intervening cause, in order to relieve a person charged with negligence in connection with an injury, must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and it only, the proximate cause of the injury.' " *Sydenstricker v. Mohan*, 618 S.E.2d 561, 568 (W. Va. 2005) (quoting *Estate of Postlewait ex rel. Postlewait v. Ohio Valley Med. Ctr., Inc.*, 591 S.E.2d 226, 232 (W. Va. 2003)). Insofar as intervening cause is a recognized defense in West Virginia, "the defense can be established only through the introduction of evidence by a defendant that shows the negligence of another party or a nonparty." *Id.* (quoting *Schreiber v. National Smelting Co.*, 104 N.E.2d 4, 8 (Ohio 1952)). Accordingly, the evidence of fault may be admitted to argue the defense of intervening cause. Furthermore, Defendants are entitled to argue and present evidence to support their theory that the conduct of Drs. Maxwell and Jain during the first surgery constituted a "reasonable secondary cause[] for the malfunction," *see* Syl. Pt. 3, *Anderson v. Chrysler Corp.*, 403 S.E.2d 189 (W. Va. 1991), such that liability is destroyed.

Plaintiff's other arguments are wholly without merit. The Supreme Court has clearly held that the Federal Rules of Civil Procedure do not require all (alleged) joint tortfeasors to be named as defendants in a single lawsuit. *See Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990). Nor does failure to join joint tortfeasors justify exclusion of all evidence of third-party liability. Finally, the Court can find no authority to support the novel assertion that Defendants are required to adhere to the strictures of the MPLA simply because the third-parties in this case are medical professionals. Accordingly, the motion [Docket 153] is **DENIED**.

*I. Defendants' Motion in Limine re: Error on Production Line Evidence [Docket 155]*

On July 13, 2011, Defendants filed their motion in limine to preclude evidence or argument regarding production line error [Docket 155]. In the motion, Defendants specifically state "Plaintiffs have been unable to establish any evidence of a specific error, and therefore, such evidence should be prohibited." (Docket 155 at 1.) Plaintiff concedes that she will not point to a specific defect in Ethicon's manufacturing process, although her biomedical engineering expert, Dr. Yadin David, is prepared to opine on various shortcomings in that process. (Docket 203 at 5-8.) In other words, Defendants seek to exclude non-existent evidence because it does not exist in this case. If the evidence does not exist in the case at this point, it cannot be procured without leave of Court. The content of closing arguments is limited to the scope of evidence presented at trial and reasonable inferences therefrom. *See, e.g., United States v. Wilson*, 135 F.3d 291, 298 (4th Cir. 1998). The motion is **DENIED** as inherently moot—the Court does not render evidentiary rulings regarding the admissibility of purely hypothetical evidence, such as evidence of a specific manufacturing defect in this case.

*J. Defendants' Motion in Limine re: Xenophobic Statements [Docket 157]*

Defendants also seek to exclude "any evidence regarding the pay and educational level of Ethicon's employees at its Juarez, Mexico manufacturing facility." (Docket 157 at 1.) Defendants argue that such evidence is irrelevant to any issue in this case and would cause unfair prejudice that substantially outweighs any probative value. (*Id.*) Plaintiff's only responses are that Defendants misunderstand the denotation of the word "xenophobic" and that the pay and educational level of Ethicon's Juarez employees is indeed relevant evidence. (Docket 195 at 3-4.) Plaintiff does not attempt to argue to what element or issue such evidence would be relevant under the Federal Rules

of Evidence; she merely recites the proper standard of relevance and asserts that it is met. Relevant evidence is any evidence having a tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401. Even if found to be relevant, a court may exclude evidence if its probative value is substantially outweighed by danger of unfair prejudice, jury confusion, or undue waste of time. *See* Fed. R. Evid. 403. The Court is unable to perceive the relevance of this evidence. At best, the evidence permits a jury to infer that uneducated Mexican workers who are allegedly underpaid are more likely to be negligent in performing their work. Further, regardless of the evidence's relevance, the probative value appears substantially outweighed by danger of unfair prejudice to Defendants. Plaintiff has at her disposal other means of demonstrating that human error on the assembly line is a possibility. The motion [Docket 157] is **GRANTED**.

*K. Defendants' Motion in Limine re: Punitive Damages [Docket 159]*

Defendants filed a motion in limine [Docket 159] to preclude various evidence of punitive damages and related arguments. The motion seeks: (1) preclusion of any mention of punitive damages in Plaintiff's opening statement and until Plaintiff proves her prima facie case for punitive damages; (2) preclusion of an excessive punitive damages proposal by Plaintiff to the jury; and (3) preclusion of any evidence of out-of-state conduct to prove punitive damages.

As to the first point, the availability of punitive damages under West Virginia law is not abundantly clear from the record currently before the Court. Explanation of punitive damages in Plaintiff's opening statements may therefore prejudice the jury and bias its consideration of the evidence. Any compensatory damages award will be tainted if Plaintiff is permitted to mention her claim for punitive damages but then ultimately fails to establish it. Accordingly, the parties are to refrain from mentioning punitive damages in their opening statements.

Turning to the second point, the Supreme Court has set forth constitutional limitations on punitive damage awards, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425 (2003) (finding of unconstitutional excessiveness more likely where punitive damages award exceeds single-digit multiplier of compensatory damages), although the exact dimensions of such limitations are at times unclear. The Court is unable to identify a problem, constitutional or otherwise, with permitting Plaintiff to seek a specific amount in punitive damages from the jury, assuming she adequately presents a prima facie case.

Finally, Defendants argue that Plaintiff must be precluded from offering evidence of similar incidents that caused harm outside West Virginia or evidence of dissimilar incidents as the basis for her punitive damages award. (Docket 160 at 7-10.) Plaintiff responds that, although the jury may not assess punitive damages based on harm done to other specific individuals, it may consider other similar incidents and harms in assessing the reprehensibility of Defendants' conduct. (Docket 209 at 5-6.)[3] Plaintiff is correct that a jury in West Virginia can consider a defendant's conduct against nonparties in determining whether that defendant's conduct was reprehensible, but a jury may "not award punitive damages as punishment for conduct toward nonparties." *Perrine v. E.I. du Pont de Nemours & Co.*, 694 S.E.2d 815, 877 n.69 (W. Va. 2010) (quoting *Philip Morris USA v. Williams*, 549 U.S. 346, 353 (2007)). The rationale underlying the distinction (if any) is that similar conduct is indicative of danger to the general public, which is particularly reprehensible. Furthermore, even *State Farm v. Campbell*, on which Defendants premise this portion of their motion in limine, states that out-of-state conduct may be used to demonstrate deliberateness and culpability in order to

---

[3] The parties appear to agree that dissimilar incidents associated with Defendants may not be considered by the jury.

bolster a finding of reprehensibility, provided it bears a sufficient nexus to the facts at hand. *See id.* at 422. The Court is mindful that, if warranted, it should give the limiting instruction specifically required by *State Farm*. *Id.* at 422 ("A jury must be instructed . . . that it may not use evidence of out-of-state conduct to punish a defendant for action that was lawful in the jurisdiction where it occurred."). The Court is likewise aware of its duty to distinguish for the jury between use of conduct toward non-parties to assess Defendants' reprehensibility as opposed to awarding punitive damages regarding that independent conduct in itself. *See generally Phillip Morris USA v. Williams*, 549 U.S. 346. Accordingly, the motion is **DENIED** without prejudice on this point, subject to Defendants' right to re-raise the issue according to the evidence presented at trial.

Defendants' motion [Docket 159] is **GRANTED IN PART** and **DENIED IN PART**. The motion is **GRANTED** insofar as it seeks to preclude Plaintiff from setting forth her punitive damages claim in her opening statement. It is **DENIED** in all other respects, subject to Defendants' right to re-assert certain arguments at trial with the benefit of all the evidence.

*L. Defendants' Motion in Limine re: Lost Wages and Earning Capacity [Docket 162]*

Defendants also filed a motion in limine [Docket 162] to preclude argument or evidence regarding lost wages or lost earning capacity. In the motion, Defendants argue that Plaintiff was not employed at the time of injury and therefore cannot recover lost wages. (Docket 163 at 3-4.) Defendants also argue that because her impairment is not permanent, any claim for lost earning capacity cannot be maintained as a matter of law. (*Id.* at 2-3.) Plaintiff responds that both she and her husband are able to properly show lost earning *opportunity*, as opposed to either lost wages or lost earning capacity. (Docket 202 at 2-6.) However, in her response, Plaintiff does not expressly

oppose Defendants' motion to preclude her from presenting evidence or argument concerning both lost wages and lost earning capacity.

A claim for loss of past earnings is predicated on evidence that, due to the actions of the defendant, the plaintiff has lost earnings between the time of injury and the present date. *See* Ronald Eades, Jury Instructions on Damages in Tort Actions §6.13[3] (5th ed. 2011). Under this theory, the plaintiff is entitled to be compensated for the loss of the amount the jury finds the plaintiff was reasonably certain to have earned up to the date of trial had she not been injured. *See id.* In contrast, damages for loss or impairment of earning capacity are a type future damages. Syl. Pt. 10, *Jordan v. Bero*, 210 S.E.2d 618 (W. Va. 1974). A precursor to recovering future damages is showing with reasonable certainty that the plaintiff's injury is permanent or will have a future effect on earning capacity. *See* Syl, Pt. 1, *Adkins v. Foster*, 421 S.E.2d 271 (W. Va. 1992). "In an injury case where the manifestations of the permanent injury are obscure, 'positive medical evidence to a degree of reasonable certainty that the injury is permanent is sufficient to take the question to the jury . . . .'" *Gerver v. Benavides*, 530 S.E.2d 701, 706 (W. Va. 1999) (quoting Syl. Pt. 13, *Jordan v. Bero*, 210 S.E.2d 618).

It appears that Plaintiff is unable to sustain either theory. She admits she was unemployed at the time of injury, although she claims to have inquired with a previous employer, Verizon, about returning to work on a part-time basis. (Docket 202 at 3-4.) Thus, it appears Plaintiff is unable to prove with reasonable certainty that she is entitled to be compensated for any wages between the time of her injury (February 2009) and the present. Plaintiff also admits that she has made a full recovery from her injuries. (Docket 162-1 at 10-11.) Any theory of lost earning capacity must be predicated on a permanent injury or impairment that effects earning capacity in a concrete manner.

*See Cook v. Cook*, 607 S.E.2d 459, 468 (W. Va. 2004) (Davis, J., concurring) ("*Jordan* recognized, as have other courts, 'that impairment-of-earning capacity is recoverable only upon proof that an injury is permanent.'"). Based on Defendants' unopposed proffer of evidence, Plaintiff cannot prove she is entitled to lost wages or lost earning capacity. For this reason, the motion [Docket 162] is **GRANTED** regarding evidence of lost wages or lost earning capacity as to Plaintiff. The complaint makes no claim for lost wages or lost earning capacity as to Plaintiff's husband, and the motion is therefore **GRANTED** to the extent it seeks to preclude such evidence.

In her response, Plaintiff raises a third form of employment-related recovery: she argues that she was deprived of the opportunity to engage in part-time work at Verizon, which she intended to do. (Docket 202 at 3-4.) In *Cook v. Cook*, Justice Davis set forth this theory of recovery in a concurrence:

> [R]ecovery may be had for the loss of an earning opportunity if the claimant proves, by a preponderance of the evidence, that: (1) the opportunity was real and not merely a hoped-for prospect; (2) the opportunity was available not just to the public in general but to the plaintiff specifically; (3) the plaintiff was positioned to take advantage of the opportunity; (4) the income from the opportunity was measurable and demonstrable; and (5) the wrongdoer's negligence was a proximate cause of the plaintiff's inability to pursue the opportunity.

608 S.E.2d at 470 (quoting *Snow v. Villacci*, 754 A.2d 360, 365 (Me. 2000)). Plaintiff alleges that she desired to return to work for Verizon sometime in 2008, which is supported by Plaintiff's deposition statements that "in 2008 we [Plaintiff and her husband] started talking about we might one or both have to go back to work if the market continued what it was doing" and that "[her] first avenue would have been probably to go to Verizon to see about contracting back, because some of my peers had, to do various long- or short-term projects." (Docket 202-1 at 3-4.) Plaintiff also argues that she was uniquely qualified and experienced to take advantage of an employment

opportunity with Verizon. By Plaintiff's own admission, then, she was merely thinking about contacting Verizon to inquire about returning to work to perform possibly part-time, possibly full-time work. In other words, the evidence of lost earning opportunity is overwhelmingly speculative; Plaintiff offered no evidence that Verizon would have offered her employment. Plaintiff's argument that her husband is entitled to assert a lost earning opportunity claim fails for similar reasons; there was no opportunity beyond a "hoped-for prospect." Most forcefully, the complaint sets forth the damages sought in this action as "[p]ast and future lost wages, income, and earning capacity on the part of Sandra Hershberger." (Docket 1-1 at 9.) Evidence of lost earning opportunity is highly speculative and irrelevant to the economic damages Plaintiff seeks in her complaint, and it will therefore be excluded from trial. This motion [Docket 162] is therefore **GRANTED** in its entirety.

*M. Defendants' Motion in Limine re: Medical Expenses [Docket 164]*

In their motion in limine to exclude various medical expenses [Docket 164], Defendants argue: (1) Plaintiff was scheduled to have the colostomy reversed prior to any allegation of fault, and any evidence on this point is therefore irrelevant to damages; (2) any costs attributable to Plaintiff's subsequent surgical infection cannot be attributed to Defendants by admissible evidence, and those costs should therefore be excluded at trial; and (3) surgeon error, and not Defendants' allegedly defective product, necessitated a surgery in July 2009 to successfully reverse Plaintiff's colostomy. (Docket 165 at 1.)

As to the first argument, the alleged failure of the stapler to deploy staples during the first surgery on February 6, 2009, necessitated a second attempt to achieve an anastomosis. There are costs associated with the increased duration and scope of surgery, and Plaintiff alleges that those increased costs are attributable to Defendants. The question of how much, if any, of the medical

costs from the February 2009 surgeries should be borne by Defendants is a jury question. Defendants are free to argue offset for the reasons cited in this motion.

As to the second argument, Dr. Sullivan's testimony is adequate to submit the question of causation to the jury, *see infra*, and the issue of medical expenses related to the surgical site infection must likewise be resolved by the jury. Finally, and relatedly, the question of proximate causation among the alleged defect and physician error in February 2009 surgeries is a jury question. Once the jury resolves that question, it will decide whether Defendants are liable for medical expenses associated with Plaintiff's July 2009 successful anastomosis. The motion [Docket 164] is **DENIED** in its entirety.

*N. Defendants Motion in Limine re: Infection Causation [Docket 167]*

Defendants filed a motion in limine [Docket 167] to exclude testimony from Drs. Maxwell and Sullivan that the increased duration of Plaintiff's surgeries in February 2009 was causally linked to her subsequent surgical infection. (Docket 169 at 4-6.) According to Defendants, neither physician can testify to a reasonable degree of medical probability, and therefore, their testimony is irrelevant and inadmissible. (Docket 240 at 2-3.) Plaintiff responds that in his expert report, Dr. Sullivan clearly states that "it is [his] opinion with reasonable medical certainty that had the [first] stapler fired correctly these sequalae [sic] would not have resulted." (Docket 213-6 at 3.) One of the sequelae Dr. Sullivan discusses immediately prior to this statement is the surgical infection of Plaintiff's bowel. As the Court stated in its February 15, 2012, Memorandum Opinion and Order:

> the proper standard for expert testimony on the subject of causation was enunciated in Syllabus point 3 of the West Virginia Supreme Court's opinion in *Hovermale v. Berkeley Springs Moose Lodge No. 1483*, 271 S.E.2d 335 (1980): "Where a physician is testifying as to the causal relation between a given physical condition and the defendant's negligent act, he need only state the matter in terms of a reasonable probability." *See also* Syl. pt. 1, *Pygman v. Helton*, 134 S.E.2d 717

> (1964) ("Medical testimony to be admissible and sufficient to warrant a finding of proximate cause of an injury is not required to be based upon a reasonable certainty that the injury resulted from the negligence of the defendant. All that is required to render such testimony admissible and sufficient is that it should be of such character as would warrant a reasonable inference that the injury in question was caused by the negligent act or conduct of the defendant."). In their reply brief, Defendants argue that it is dispositive that Dr. Sullivan "did not state to a reasonable degree of medical probability that such increased risk was a substantial factor in causing Ms. Hershberger's surgical site infection." (Docket 246 at 9.) However, at the [*Daubert* hearing], Dr. Sullivan opined that the increased risk of infection caused by the alleged product defect and related complications was a substantial factor in leading to Ms. Hershberger's post-surgical infection. [Docket 337 at 34-36.] Dr. Sullivan also stated that he holds that opinion to a reasonable degree of medical certainty as a colorectal surgeon. Following West Virginia precedent, the Court declines to exclude Dr. Sullivan's testimony on this basis.

(Docket 334 at 21.) The Court reaffirms its prior holding regarding the admissibility of Dr. Sullivan's opinion, and accordingly **DENIES** the motion in limine [Docket 167].

*O. Defendants' Motion in Limine re: Peter McNally Statements [Docket 177]*

In their final motion in limine [Docket 177], Defendants argue that a statement allegedly made by Peter McNally, an Ethicon sales manager, is irrelevant under Federal Rules of Evidence 401 and 402, and in the alternative, is more prejudicial and confusing than probative under Rule 403. (Docket 178 at 1-2.) The statement at issue is that the stapler involved in Plaintiff's surgery was defective, and it was allegedly made immediately after Mr. McNally personally inspected the stapler. Defendants seek exclusion of the alleged statement by arguing: (1) Mr. McNally never gave the statement; (2) Mr. McNally is not an engineer qualified to render an opinion regarding the stapler's functionality; (3) Mr. McNally was not present during the surgery and therefore did not witness Dr. Jain discharge the stapler; and (4) Mr. McNally has not reviewed the medical records in this case. (Docket 236 at 1-2.)

Relevant evidence is any evidence having a tendency to make a fact of consequence more or less probable. *See* Fed. R. Evid. 401. Even if relevant, a court may such exclude evidence if its probative value is substantially outweighed by danger of unfair prejudice, jury confusion, or undue waste of time. *See* Fed. R. Evid. 403. Contrary to the arguments put forth by Defendants, the statement is plainly relevant to the ultimate issue of fact in this case. After examining the stapler at issue, Mr. McNally, an Ethicon representative, is alleged to have conceded liability. The arguments made by Defendants in their motion—that Mr. McNally denies making the statement, is not an engineer, and did not witness the operation—are all excellent points for cross-examining the proponent of this evidence and otherwise challenging its weight. However, that a representative of Defendants allegedly admitted liability shortly after inspecting the device at issue is relevant evidence. The Court is unable to perceive jury confusion or undue prejudice to the Defendants arising from this evidence. To the extent those factors exist, the Court is confident that zealous cross-examination, and not exclusion of the evidence, is the appropriate answer. The motion [Docket 177] is **DENIED**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 29, 2012

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE